1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                    Plaintiff,<br><br>v.<br><br>STEVEN ANTHONY BASH,<br><br>                                    Defendant. | Case No.:  25cr140-BTM-1<br><br>**ORDER DENYING MOTION TO SUPPRESS EVIDENCE**<br><br>**[ECF NO.  29]** |

Pending before the Court is Defendant Steven Anthony Bash's motion to suppress evidence.  (ECF No. 29).  The Court held evidentiary hearings on June 12, 2025, and August 4, 2025.  For the reasons discussed below, the Court denies the suppression motion.

## I. FACTUAL BACKGROUND

The Court finds the following facts from the evidence presented at the evidentiary hearings and from the declarations of Homeland Security Officer John Pantoja and Homeland Security Agent Valentin Obregon, which were adopted as their direct testimony at the hearings.

Officer Pantoja conducted an interview of B.D., a detainee from a drug investigation, on October 11, 2024.  B.D. admitted to delivering about 2-3 ounces of fentanyl a week to the defendant and explained that the defendant carried

1    fentanyl into the United States from Mexico.  Officer Pantoja started to investigate

2    the defendant and found that the defendant had empty ballons inside a plastic tube

3    as he entered the United States from Mexico on November 22, 2022.  Officer

4    Pantoja reviewed the defendant's crossings into the United States from Mexico,

5    and over about five weeks, during the period of September 2024 to October 11,

6    2024, the defendant made the crossing from Mexico to the United States about 25

7    times—sometimes multiple times a day.  Officer Pantoja also saw that on the

8    defendant's Facebook page, the defendant posted a picture of a BMW and stated

9    that he paid cash for it.  Officer Pantoja identified the background of the picture as

10   the Hotel Palmeras, in Chula Vista.

11        Officers conducted surveillance of the defendant at Hotel Palmeras on

12   December 10, 2024.  On that day, the defendant met someone in a nearby parking

13   lot, entered her car for about five minutes, and then returned to the hotel.  The

14   defendant also met another person in the hotel parking lot for less than eight

15   minutes.

16        Officer Pantoja and other officers conducted surveillance of the defendant

17   on December 17, 2024.  The defendant was in the parking lot of a Sure Stay Best

18   Western in Chula Vista with R.E. and another person.  The defendant went into a

19   hotel room, came back out to the parking lot, and handed something to R.E.

20   Officers observed R.E. travel to a McDonald's and go inside for about fifteen

21   minutes.  R.E. then walked across the street to the E Street Chula Vista Transit

22   Center (CV Transit Center).  Officers observed R.E. attempting to use narcotics,

23   arrested him, and seized from him about four grams of fentanyl.  R.E. admitted he

24   had fentanyl and claimed to have obtained it at a homeless encampment in

25   Santee.

26        At about 11:30 a.m., officers handcuffed and arrested the defendant across

27   the street from the Best Western, searched his person, and found about 4.8 grams

28   of fentanyl.  The officer also seized the defendant's backpack.  To keep the officers

25cr140-BTM-1

1  safe and move away from the hotel where the defendant could have accomplices,

2  an officer transported the defendant to the CV Transit Center, which took about

3  eight minutes.  At the CV Transit Center, an officer searched the defendant's

4  backpack and found about 40 grams of fentanyl.  The defendant was transported

5  to the San Ysidro port of entry for processing.

## II. LEGAL BACKGROUND

7  "[T]he government bears the burden of showing that a warrantless search or

8  seizure falls within an exception to the Fourth Amendment's warrant requirement."

9  *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012).  Law enforcement

10  officers must have probable cause to arrest a person without a warrant.  *United*

11  *States v. Jensen*, 425 F.3d 698, 704 (9th Cir. 2005).  "The rule of probable cause

12  is a practical, nontechnical conception."  *Brinegar v. United States*, 338 U.S. 160,

13  176 (1949).  The rule is satisfied when officers have "reasonably trustworthy

14  information" allowing a prudent person to fairly believe that an offense is being (or

15  was) committed.  *United States v. Bernard*, 623 F.2d 551, 559 (9th Cir. 1979);

16  *accord Beck v. Ohio*, 379 U.S. 89, 91 (1964); *United States v. Hamilton*, 131 F.4th

17  1087, 1094 (9th Cir. 2025) ("Probable cause justifying a warrantless arrest exists

18  where, under the totality of the facts and circumstances known to the arresting

19  officer, a prudent person would have concluded that there was a fair probability

20  that the suspect had committed a crime." (citation, quotation marks, and emphasis

21  omitted)).  "The standard for determining whether probable cause or reasonable

22  suspicion exists is an objective one; it does not turn either on the subjective thought

23  processes of the officer or on whether the officer is truthful about the reason for

24  the stop."  *United States v. Magallon-Lopez*, 817 F.3d 671, 675 (9th Cir. 2016).

25  When assessing whether there was probable cause for an arrest, courts look

26  to the totality of the circumstances and "must consider all the facts known to the

27  officers and consider all the reasonable inferences that could be drawn by them

28  before the arrest."  *Bernard*, 623 F.2d at 559; *see also Illinois v. Gates*, 462 U.S.

25cr140-BTM-1

213, 230-34 (1983).  Courts look to the collective knowledge of all the officers in the investigation and also should give due weight to their experience and training. *United States v. Ramirez*, 473 F.3d 1026, 1032-33 (9th Cir. 2007) (summarizing the collective knowledge doctrine); *Bernard*, 623 F.2d at 560 (explaining that DEA agents' "experience may properly be considered in determining whether they had probable cause to make the arrests").  Seemingly "innocent events" can be a basis for probable cause where those events combine to make criminal conduct more likely than innocent behavior.  *Id.* at 560; *see also United States v. Cortez*, 449 U.S. 411, 418 (1981) (explaining that law enforcement officers may make "commonsense conclusions about human behavior").

Officers may conduct a warrantless search "incident" to an arrest.  *See United States v. McConney*, 728 F.2d 1195, 1206-07 (9th Cir. 1984).  The search must be limited to areas within an arrestee's "immediate control" and must be "spatially and temporally limited to the arrest."  *United States v. Cook*, 808 F.3d 1195, 1199 (9th Cir. 2015) (citations omitted).

Officers may conduct an inventory search of an item if the search is based on "standardized criteria" or "established routine."  *See Florida v. Wells*, 495 U.S. 1, 4 (1990); *accord Cervantes*, 703 F.3d at 1141 ("Once a vehicle has been legally impounded, the police may conduct an inventory search, as long as it conforms to the standard procedures of the local police department.").  Where an item would inevitably be subject to an inventory search, the exclusionary rule does not apply. *United States v. Andrade*, 784 F.2d 1431, 1433 (9th Cir. 1986); *accord United States v. Peterson*, 902 F.3d 1016, 1019 (9th Cir. 2018).

### III. DISCUSSION

**A. The officers had probable cause to arrest the defendant.**

There was probable cause for the defendant's arrest.  There was a tip from B.D. indicating that the defendant was involved in drug trafficking.  That tip was corroborated by the record of the defendant's border crossings, which was strong

1   evidence of drug trafficking.  Indeed, during one border crossing, the defendant

2   carried ballons often used for drug trafficking.  His Facebook post, where he

3   claimed he bought a BMW in cash, supported the fact that he may be a drug

4   trafficker.  His interactions in the hotel parking lot on December 10, 2024, which

5   looked to Officer Pantoja like hand-to-hand transactions, were strong evidence of

6   drug trafficking.  *See Cortez*, 449 U.S. at 418 (explaining that law enforcement

7   officers may make "commonsense conclusions about human behavior").  But any

8   potential question of probable cause was resolved on December 17, 2024.

9       On that day, the defendant (again in a hotel parking lot) gave something to

10  R.E. about fifteen minutes before R.E. was trying to use narcotics.  To be sure,

11  based on the short passage of time, there was a theoretical possibility that R.E.

12  obtained the narcotics from someone else.  But law enforcement officers do not

13  need virtual certainty to make an arrest.  They need probable cause, and they had

14  it here.  *See Bernard*, 623 F.2d at 559; *Beck*, 379 U.S. at 91; *Hamilton*, 131 F.4th

15  at 1094.

16  **B. The Court need not decide whether the search of the backpack was**

17  **"incident" to the arrest.**

18      When the officers searched the defendant's backpack, about eight minutes

19  had passed since the defendant's arrest, and the officer had driven the defendant

20  to a different location.  The defendant was handcuffed and seated in the back of

21  the police car.  The search of the backpack occurred at the trunk of the car.

22      Police officers are allowed to conduct warrantless searches "incident" to

23  arrest to prevent the arrestee from gaining possession of a weapon or from

24  destroying or altering evidence.  *Arizona v. Gant*, 556 U.S. 332, 339 (2009); *accord*

25  *Cook*, 808 F.3d at 1199.  Under that rationale, the search here may not have been

26  incident to arrest—because there was essentially no risk that the defendant could

27  gain access to the backpack.  *See Gant*, 556 U.S. at 335 (holding that the search

28  of the defendant's car was not incident to the arrest where the defendant was

25cr140-BTM-1

1    handcuffed and locked in a patrol car); *United States v. Maddox*, 614 F.3d 1046,

2    1049 (9th Cir. 2010) ("With Maddox handcuffed in the backseat of the patrol car,

3    no possibility of Maddox concealing or destroying the key chain and the items

4    contained therein, and no sighting of weapons or other such threats, Officer

5    Bonney's search of Maddox's key chain was not a valid search incident to arrest.").

6    However, the fact that an arrestee is handcuffed is not dispositive when

7    assessing whether a search was incident to the arrest.  *See Cook*, 808 F.3d at

8    1199-1200.  The primary inquiry instead is whether the search was "spatially and

9    temporally incident to the arrest."  *United States v. Camou*, 773 F.3d 932, 937 (9th

10   Cir. 2014).  Under that standard, the search here was likely incident to arrest.

11   The defendant's backpack was in his immediate control at the time of the

12   arrest.  Although an officer drove the defendant to a different location before

13   searching the backpack, it was reasonable to do so.  It was reasonable for the

14   officer to fear that the defendant's accomplices could be watching them or might

15   approach the scene.  Because about only eight minutes passed between the arrest

16   and the search, and because it was reasonable for the officer to move the

17   defendant, there is a strong argument that the search was spatially and temporally

18   limited to the arrest and thus reasonable.  *See Camou*, 773 F.3d at 938 (explaining

19   that when an item is within the defendant's immediate control at the time of arrest,

20   and if subsequent events do not make the search unreasonable, the search is

21   typically "incident" to arrest).

22   The Court need not, however, resolve this question.  Even if the search was

23   not incident to arrest, the exclusionary rule would not apply because the backpack

24   would have been subject to an inventory search.

25   **C. The backpack would have been subject to an inventory search and**

26   **thus, the exclusionary rule does not apply.**

27   The officers arrested the defendant before they searched his backpack.  The

28   defendant contends that the Government has not shown that the officers would

25cr140-BTM-1

1  have brought him to MCC for booking if they had not first found the narcotics in the

2  backpack.  The Court finds that the officers would have brought him to MCC for

3  booking if they had not searched the backpack because the officers already

4  arrested the defendant for drug trafficking after a thorough investigation.

5        At MCC for booking, the backpack would have been subject to an inventory

6  search because the Government has shown that there were established inventory

7  procedures.  The Federal Bureau of Prisons' Inmate Personal Property Statement

8  precludes inmates from retaining contraband and thus necessitates inventorying

9  backpacks for safekeeping and recordkeeping. (ECF No. 31, Exh. 4).  Immigration

10 and Customs Enforcement has a Search and Seizure Handbook providing for such

11 inventory searches and requiring inventory searches of containers such as a

12 backpack.  (ECF No. 31, Exh. 5 at 42-43).

13       The Government has shown by a preponderance of the evidence that (a) the

14 officers would have booked the defendant for drug trafficking had they not

15 searched the backpack and (b) that the backpack would have inevitably been

16 subject to an inventory search, which would have resulted in the seizure of its

17 contents.  The exclusionary rule is thus inapplicable.  *See Andrade*, 784 F.2d at

18 1433; *accord Illinois v. Lafayette*, 462 U.S. 640, 648 (1983) ("[I]t is not

19 'unreasonable' for police, as part of the routine procedure incident to incarcerating

20 an arrested person, to search any container or article in his possession, in

21 accordance with established inventory procedures.").

22 //

23 //

24 //

25 //

26 //

27 //

28 //

25cr140-BTM-1

1

## IV. CONCLUSION

2          For the reasons stated, the defendant's motion to suppress evidence is

3   denied.  (ECF No. 29).

4   **IT IS SO ORDERED.**

5   Dated:  September 2, 2025

6   _____
    Honorable Barry Ted Moskowitz
7   United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

25cr140-BTM-1